[Civ. No. 6547. Third Appellate District.—November 18, 1940.]

THE CITY OF TULELAKE (a Municipal Corporation), Petitioner, v. HAROLD ROATH, as City Clerk, etc., Respondent.

Charles Lederer, City Attorney, and H. A. Postlethwaite for Petitioner.

Charles Baldwin for Respondent.

PULLEN, P. J.—This is a proceeding in mandate to compel the respondent to sign as City Clerk of the City of Tulelake, a city of the sixth class, certain bonds issued by the city council of that city, under the Bond Act of 1901 (Stats. 1901, p. 27, Deering's General Laws 1937, page 2246, Act 5178).

The refusal of respondent is based upon the failure of the city council to designate in the ordinance calling the special election, the newspaper in which such ordinance should be published. No other objections are urged against the validity of the proposed bonds.

That portion of the statute pertaining to publication is as follows:

"Sec. 3. Publication of ordinance: Vote necessary to carry. Such ordinance shall be published once a day for at least seven days in some newspaper published at least six days a week in such municipality, or once a week for two weeks in some newspaper published less than six days a week in such municipality, and one insertion each week for two succeeding weeks shall be a sufficient publication in such newspaper published less than six days per week. . . . "

The ordinance was in fact actually published at the times and in the manner and form prescribed by law in the Tulelake Reporter, a newspaper of general circulation published in the City of Tulelake, which was then the official newspaper of Tulelake, having been previously so designated the official newspaper in which all official notices of the city should be published. Upon the day set in the ordinance the election was held, and upon the canvassing of the returns it was found that there was cast a total of 203 votes, of which 199 were cast in favor of the proposition and 1 against.

Even if it can be said that the statute makes it the duty of the council to designate the particular newspaper in which the ordinance shall appear it cannot be said the

failure to do so was sufficient to invalidate the entire proceedings.

In the early case of *People* v. *Hoge,* 55 Cal. 612, a special election to choose a board of freeholders was called by the board of election commissioners of the City and County of San Francisco. It was contended the authority to call such an election was vested in the board of supervisors and not in the board of election commissioners. There, as here, the honesty and fairness of the election was conceded, and the only claim was lack of authority. The court, after holding the board of election commissioners was authorized to act as it did, quoted with approval from *Dishon* v. *Smith,* 10 Iowa, 212, 218:

"Upon considerations like this, the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have in truth been called upon and have spoken. In the present case, whether there was notice or not, there was an election, and the people of the county voted, and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise."

This court, in *County of Sacramento* v. *Stephens,* 11 Cal. App. (2d) 110 [53 Pac. (2d) 197], adopted a similar view. There a joint school district, lying, partially in Sacramento County and partially in Placer County, called an election to authorize the issuance of improvement bonds. In attacking the validity of the bonds voted it was claimed the district failed to publish notice of the election as required by section 4.961 of the School Code, such notice having been published only in Placer County and not in Sacramento County also. In answer thereto it was held that such publication was a harmless irregularity where the election was otherwise conducted according to law, and the notice of the time, place and purpose of the election had been published as a matter of news in papers published in Sacramento County, and substantially all of the qualified voters in the latter county voted at the election. The rule there laid down is thus expressed:

"The test for determining whether a bond election is rendered invalid for failure to strictly comply with the statute with relation to the giving of notice thereof is to ascertain whether the voters of the district generally have had knowl-

edge of the time, place and purpose of the election so as to give them full opportunity to attend the polls and express their will regarding the incurring of the obligation, or, upon the other hand, whether the omission has resulted in depriving a sufficient number of the qualified electors therein of the opportunity of exercising their franchise so as to change the result of the election. (*County of Sonoma* v. *Sanborn,* 1 Cal. App. (2d) 26 [36 Pac. (2d) 419]; 20 Cor. Jur., p. 96, sec. 80; *In re East Bay Municipal Utility District Bonds of 1925,* 196 Cal. 725 [239 Pac. 38]; *Weisgerber* v. *Nez Perce County,* 33 Idaho 670 [197 Pac. 562].)"

*In re East Bay Municipal Utility District Bonds of 1925, supra,* the rather pessimistic view is there expressed that, "It is a well known fact that the ordinary newspaper notice of a forthcoming election does not, in fact, have the desired effect of notifying the electors thereof. The ordinary qualified voter is so busy attending to his private affairs, and is so apathetic regarding matters touching the public welfare, that a printed newspaper notice of an election to be held, whether in the near or the distant future, even if seen by such voter, excites in him no particular interest." In the case just cited there are collected many cases from this and other jurisdictions as well as quotations from text writers to the effect an omission such as is before us here is not fatal to the validity of the bonds.

The rule as expressed in *Weisgerber* v. *Nez Perce Co., supra,* and quoted in the East Bay case, *supra,* is undoubtedly the rule in this jurisdiction, that is, "that statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory, unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void."

Let the writ issue.

Thompson, J., and Tuttle, J., concurred.